**FILED**
**CLERK**

1/25/2019 4:44 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

MOHAMMADREZA DAEISADEGHI,

               Plaintiff,

        -against-

EQUINOX GREAT NECK, INC.,

               Defendant.

-------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:16-cv-01698 (ADS)(SIL)

<u>**APPEARANCES:**</u>

**White Ricotta & Marks, P.C.**
*Counsel for the Plaintiff*
3110 37th Avenue, Suite 401
Long Island City, NY 11101
      By:    Thomas Ricotta, Esq., Of Counsel

**LaRocca Hornik Rosen Greenberg & Blaha LLP**
*Counsel for the Defendant*
40 Wall Street
New York, NY 10005
      By:    Patrick T. McPartland, Esq.,
             Jared E. Blumetti, Esq.,
             Lawrence S. Rosen, Esq., Of Counsel

**SPATT, District Judge**:

On April 7, 2016, Mohammadreza Daeisadeghi (the "Plaintiff" or "Daeisadeghi") brought this federal discrimination action against Equinox Great Neck, Inc. (the "Defendant"), alleging national origin-based discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. based on a hostile work environment and his wrongful termination as a Personal Training Manager at Equinox Holdings, Inc. ("Equinox").

Presently before the Court is a motion for summary judgment filed by the Defendant, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 56 seeking to dismiss the complaint. For the reasons set forth below, the motion is granted.

## I. BACKGROUND

Unless otherwise noted, the following facts are undisputed and are drawn from the parties' Local Rule 56.1 statements and the statement of facts section of the Plaintiff's briefing papers.

### A. THE FACTUAL BACKGROUND

#### 1. The Parties

The Defendant is a single purpose entity which acts as the lessee of the Great Neck Club, owned and operated by Equinox, which manages more than 90 luxury fitness clubs throughout the United States, Canada and the United Kingdom. Equinox is the parent company of the Defendant. At issue in this case are two clubs, one located in Roslyn, New York (the "Roslyn Club") and the other in Great Neck, New York (the "Great Neck Club").

The Plaintiff is an Iranian man who speaks Farsi natively as well as fluent English and Arabic. He was employed by Equinox from January 2011 until April 2015. Daeisadeghi applied for and was hired as a Fitness Manager in Training, initially at the Great Neck Club. From January 2011 to September 2011, the Plaintiff underwent training at the Great Neck Club. In September 2011, he was promoted to Fitness Manager and in December 2011, Daeisadeghi was promoted again, this time to Personal Training Manager and transferred to the Roslyn Club. He remained assigned to the Roslyn Club until December 2012. From January 2013 until the termination of his employment in April 2015, the Plaintiff was located in the Great Neck Club. As Personal Training Manager, the Plaintiff was responsible for supervising approximately 40 employees in the personal

training department. All of the Plaintiff's allegations in this case occurred after January 2013, when the Plaintiff was a Personal Training Manager at the Great Neck Club.

Joshua Harrison ("Harrison") has been employed by Equinox since 2005. During the course of the Plaintiff's employment, Harrison held the positions of Area Personal Training Manager and Regional Personal Training Manager. Harrison was involved in the decision-making processes that led to Daeisadeghi's hiring and subsequent promotions.

Matthew Bekteshi ("Bekteshi") was employed by Equinox from October 2012 to April 2017. He was hired as the Assistant General Manager of the Great Neck Club. In October 2013, he was then promoted to General Manager of the Great Neck Club.

Michael Caporusso ("Caporusso") has been employed by Equinox since 2000. He has been a Regional Director of Personnel Training since January 2014 and is responsible for the overall performance and operation of the personal training department for all Equinox fitness clubs in his region, including the Great Neck Club.

**2. Alleged Hostile Work Environment**

When the Plaintiff was hired, he signed an acknowledgement of his receipt of Equinox's harassment policies, complaint procedures and the Employee Handbook. As explained in the Employee Handbook, Equinox maintained a toll-free ethics hotline, which was available 24 hours a day, seven days a week.

In September 2014, the Plaintiff was a Personal Training Manager at the Great Neck Club and Bekteshi was the General Manager of the Great Neck Club. The Plaintiff's position required him to visit Bekteshi's office every day. When he did, Bekteshi would purportedly mock Daeisadeghi's accent and pretend that he was unable to understand the Plaintiff. Bekteshi also allegedly referred to the Plaintiff and Equinox customers as "crazy Persians." While Bekteshi

contends that the two were merely joking, and that the Plaintiff often referred to him as a "crazy Albanian," purportedly in reference to Bekteshi's national origin, Daeisadeghi denies engaging in such conduct or that it was playful bantering. The Plaintiff also stated in his deposition that on multiple occasions he told Bekteshi and others that he was going to "kick their ass" or "kick them in the head," presumably in a joking manner. The Plaintiff is a former professional kickboxer.

Daeisadeghi contends that in or about September 2014, he complained to Harrison, and James Gu, the Regional Director regarding Bekteshi's conduct. As explained *infra*, this was approximately one month after the Plaintiff asserts that Harrison began discriminating against him on the basis of his national origin. One month later, he purportedly spoke with Caparuso regarding Harrison's actions. Yet, an examination of the record reveals only that the Plaintiff spoke with Harrison, Gu and Caparuso about business-related matters. Although he did mention in his deposition that these conversations sometimes involved Harrison's and Bekteshi's actions, he backtracked on those claims numerous times.

Daeisadeghi alleges that beginning in August 2014, Harrison, who was either the Area Personal Training Manager or Regional Personal Training Manager at the time, also referred to the Plaintiff as a "crazy Persian" and would, at times, "elongate" his name. This conduct supposedly occurred on weekly conference calls. The Plaintiff never reported any such allegations to human resources or the ethics hotline. Harrison claims that he was playful during these conference calls and that he said the Plaintiff's name with a "flourish" as a term of endearment. Another former employee, Ramon Solano, who was born in the Dominican Republic, testified during his deposition that Harrison occasionally exaggerated the pronunciation of his name on calls, and that Harrison made a habit of "pok[ing] fun" of employees regardless of their national origins.

4

The Plaintiff testified in his deposition that Harrison's and Bekteshi's alleged conduct did not cause him any psychological harm. He further stated that the purported behavior had no impact on his job performance and repeatedly emphasized that his job performance was excellent.

### 3. The Plaintiff's Termination

During the relevant time period, Equinox offered its employees a 40% discount on the purchase of personal training sessions. The company's written policy stated that the discount was only for the use of employees, and that anyone using his or her discount for other people would be disciplined up to and including termination.

Beginning in June 2013, the Plaintiff began purchasing personal training sessions for Ilene Cohen ("Cohen"), an attorney who was a member of the Roslyn Club, as compensation for various legal services provided to the Plaintiff between 2013 and 2016. On October 22, 2014, David Harris, the Vice President of Personal Training for Equinox, sent an email entitled "PT Ethical Transgressions" to all Equinox Personal Training Managers, Fitness Managers, General Managers and Regional Managers regarding the use of employee discounts. Mr. Harris notified the recipients that the company had discovered certain employees that had been inappropriately purchasing personal training sessions for members using their employee discount. The email states, in pertinent part:

> Recently, a situation occurred across one of our largest markets in which Personal Training Managers, sometimes with the knowledge of [General Managers], were purchasing (with discount privileges in their own accounts), and pulling Personal Training vouchers [] for members to whom they were close[.] …
>
> <u>All</u> of this activity was and is in blatant violation of our ethical code relative to how we operate the PT business.
>
> As a reminder to all, the 40% discount for Personal Training purchase is a privilege granted to us as employees to engage in Personal Training with our staff. …

I wanted everyone to know that as of this month, monitoring for this and other types of unethical transactions have escalated and we will continue to place a premium on conducting our business ethically. Anyone caught engaging in this or other unethical activity will be subject to immediate termination.

Affidavit of Michael Caporusso ("Caporusso Aff"), Ex. B (emphasis in original).

On March 29, 2015, Harrison observed Cohen using a personal training session at the Roslyn Club that was purchased using the Plaintiff's employee discount. The Plaintiff disputes that this was the first time Harrison observed Cohen using the Plaintiff's employee discount and alleges that Harrison and Bekteshi were previously aware of this practice. Harrison emailed the Plaintiff that morning and asked the Plaintiff why Cohen was using a training session in his name. Daeisadeghi responded that he purchased discounted sessions for her "as a gift" for her assistance regarding a custody dispute. The Plaintiff further explained that the sessions were purchased prior to the October 22, 2014 email from David Harris reminding employees of the consequences of inappropriately using employee discounted personal training sessions.

Harrison reported the incident to Caporusso and forwarded the Plaintiff's email explaining the situation. Equinox conducted an investigation into the discounted personal training sessions purchased for Cohen using the Plaintiff's employee discount and concluded that at least 276 personal training sessions were purchased by Cohen using the Plaintiff's employee discount between June 2013 and January 2015, amounting to more than $10,000.00 in discounts for Cohen during the relevant time period. The investigation also revealed that personal training sessions were purchased using the Plaintiff's employee discount after October 22, 2014, the date of the David Harris email. The Plaintiff confirmed this during his deposition.

Based on Equinox's investigation, which concluded that personal training sessions were purchased using the Plaintiff's employee discount after the David Harris email, Caporusso

determined that the Plaintiff violated Equinox's policy regarding the use of employee discounts. On April 1, 2015, Caporusso terminated the Plaintiff's employment with Equinox.

## B. THE PROCEDURAL BACKGROUND

On April 7, 2016, the Plaintiff commenced this action against the Defendant by filing a summons and complaint in this Court. The Defendant answered the complaint on July 28, 2016. On August 13, 2018, the Defendant filed the instant motion for summary judgment seeking dismissal of the Plaintiff's claims.

## II. DISCUSSION

## A. STANDARD OF REVIEW: FED. R. CIV. P. 56

Pursuant to Rule 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Kwong v. Bloomberg*, 723 F.3d 160, 164-65 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). When deciding a motion for summary judgment, "[t]he Court 'must draw all reasonable inferences and resolve all ambiguities in favor of the non–moving party.'" *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998) (quoting *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1998)). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In considering a summary judgment motion pursuant to Rule 56, the Court must "view the evidence in the light most favorable to the non-moving party … and may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations omitted); *see also Doro v. Sheet Metal*

*Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir. 2007) (noting that in deciding a summary judgment motion, the court will "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all inferences and resolv[e] all ambiguities in favor of the nonmoving party"); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (stating that in deciding a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." (internal citations omitted)).

It is the movant's burden to initially demonstrate the absence of material facts that preclude summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005) (citing *Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994)). Such a "burden on the moving party may be discharged by 'showing' … that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. CocaCola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)). If the moving party meets the initial burden, the nonmoving party must present specific facts that demonstrate there is a genuine issue that should be left for the fact-finder to decide. *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002); *see also Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (requiring the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts … the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" (internal citations omitted)).

It is not the Court's responsibility to resolve any purported issues of disputed facts, but merely to "assess whether there are any factual issues to be tried, while resolving ambiguities and

drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) (internal citations omitted); *accord Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012) (stating that the Court should not attempt to resolve issues of fact, but rather "assess whether there are any factual issues to be tried"); *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (noting that the responsibility of the district court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial" (quoting *Anderson*, 477 U.S. at 249)). If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not present. *Anderson*, 477 U.S. at 249. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient. Conjecture, speculation, or conclusory statements are not enough to defeat summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (internal citations omitted).

Accordingly, in discrimination cases, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb*, 521 F.3d at 137. "[T]he plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997); *see Schnabel v. Abramson*, 232 F.3d 83, 90–91 (2d Cir. 2000); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (The question on summary judgment is "whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, it is not enough … to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." (internal citations and quotations omitted)); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996) (a plaintiff is required to

"produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge'" (quoting *Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir. 1994))).  In this circuit, the "impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable."  *Weinstock*, 224 F.3d at 41 (quoting *McLee v. Chrysler Corp.*, 38 F.3d 67, 68 (2d Cir. 1994)); *see also Abdu Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

## B.  Non-Compliance with Local Rule 56.1

As an initial matter, the Plaintiff seeks to oppose the Defendant's motion with a series of facts that he failed to assert in his Local Rule 56.1 Counterstatement of Undisputed Facts.

Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party opposing summary judgment to submit a response to the moving party's 56.1 Statement of Undisputed Facts, which "shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Rule 56.1(b).  Local Rule 56.1 further requires that a statement of undisputed facts contain citations to admissible evidence supporting each asserted fact.  Local Rule 56.1(d).

"Where the party opposing a motion for summary judgment fails to submit a proper counter-statement of material facts, controverting the moving party's statement, courts have deemed the moving party's statement of facts to be admitted and have granted summary judgment

in favor of the moving party on the basis of the uncontroverted facts." *Covey v. Simonton*, 481 F. Supp. 2d 224, 235 (E.D.N.Y. 2007). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

In the instant case, the Plaintiff filed a Rule 56.1 Counterstatement of Material Facts in opposition to the Defendant's motion for summary judgment that exclusively responded to the Defendant's factual statements. The Plaintiff fails to assert any additional facts which he is contending demonstrate a triable issue of fact. Further, the Plaintiff did not submit any exhibits in opposition to the Defendant's motion for summary judgment. However, the Plaintiff's memorandum of law contains a statement of facts that contains a series of facts which are not asserted in any 56.1 statement or counterstatement.

District courts are given "broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz*, 258 F.3d at 73. Although the Court notes the Plaintiff's failure to comply with Local Rule 56.1, the Court will consider those additional material facts that are properly supported by citations to the record.

## C. TITLE VII WRONGFUL TERMINATION CLAIM

The Plaintiff alleges that Equinox's decision to terminate him in April 2015 was a pretext for discrimination. The Defendant counters that the Plaintiff cannot show that the Defendant's proffered non-discriminatory reason was pretextual. For the reasons that follow, the Court finds that the Plaintiff has failed to demonstrate that the Defendant's proffered reason was pretextual.

When there is no direct evidence of discrimination, Title VII discrimination claims are guided by the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under this analysis, a plaintiff bears the initial

burden of establishing a *prima facie* case of discrimination. *See Norton v. Sam's Club*, 145 F.3d

114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework

should not obscure the simple principle that lies at the core of anti-discrimination cases. In these,

as in most other cases, the plaintiff has the ultimate burden of persuasion."). To do so, a plaintiff

must show, using evidence in the record, "(1) that she was within the protected [class], (2) that she

was qualified for the position, (3) that she experienced adverse employment action, and (4) that

such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*

*v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010); *Holcomb*, 521 F.3d at 138 (same).

"This burden is not a heavy one." *Gorzynski*, 596 F.3d at 107; *accord Zimmerman v. Assocs. First*

*Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (A plaintiff's burden at the *prima facie* stage to

offer evidence of circumstances giving rise to an inference of discrimination is "minimal" and "*de*

*minimis*.").

    However, a *prima facie* case cannot be established using "purely conclusory allegations of

discrimination, absent any concrete particulars." *Meiri*, 759 F.2d at 998. Establishing a *prima*

*facie* case, "in effect creates a presumption that the employer unlawfully discriminated against the

employee." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407

(1993) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 67

L. Ed. 2d 207 (1981)).

    Once a plaintiff can demonstrate a *prima facie* case of discrimination, "the burden of

production shifts to the employer to articulate a legitimate, clear, specific and non-discriminatory

reason" for taking the adverse action. *Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996).

"[I]f the defendant satisfies this burden of production, the plaintiff has the ultimate burden to prove

that the employer's reason was merely a pretext for discrimination." *Id*. A plaintiff "is not required to prove the prohibited motivation was the sole or even the principal factor in the decision, or that the employer's proffered reasons played no role in the employment decision." *Finn v. New York State Office of Mental Health-Rockland Psychiatric Ctr.*, No. 08–cv–5142, 2011 WL 4639827, at *10 (S.D.N.Y. Oct. 6, 2011) (citing *Holtz*, 258 F.3d at78). Instead, a plaintiff "must show that those were not the only reasons and that plaintiff's protected status contributed to the employer's decision." *Id*; *accord Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013) ("An employee who alleges status-based discrimination under Title VII ... [is required to] show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision."); *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 156 (2d Cir. 2010) ("In proving a case under Title VII, following the defendant's proffer of a justification, a plaintiff need only show that the defendant was in fact motivated at least in part by the prohibited discriminatory animus." (internal citations omitted)). The Supreme Court explained:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.
>
> This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the

13

action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review under Rule 50 [or Rule 56], and we have reiterated that trial courts should not "'treat discrimination differently from other ultimate questions of fact.'"

Whether judgment as a matter of law [or summary judgment] is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–49, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (internal citations omitted). The Second Circuit recently clarified *Reeves*, noting that a case-by-case analysis is required for summary judgment:

[W]e conclude that *Reeves* prevents courts from imposing a per se rule requiring in all instances that a [Title VII] claimant offer more than a prima facie case and evidence of pretext.... But the converse is not true; following *Reeves*, we decline to hold that no [Title VII] defendant may succeed on a summary judgment motion so long as the plaintiff has established a prima facie case and presented evidence of pretext. Rather, we hold that the Supreme Court's decision in *Reeves* clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff."

*Schnabel*, 232 F.3d at 90 (internal citations omitted).

In the instant case, the parties do not dispute that the Plaintiff has properly asserted a *prima facie* case of discrimination. Therefore, the Court will assume that, for the purposes of this motion, a *prima facie* case has been established and address the remaining two *McDonnell Douglas* requirements.

### 1. Whether the Defendant has a Legitimate, Non-Discriminatory Explanation

Assuming, *arguendo*, that Daeisadeghi can establish a *prima facie* case of national origin discrimination regarding his termination, it would be the Defendant's burden to proffer a legitimate, non-discriminatory reason for terminating the Plaintiff. To do this, the Defendant argues that Daeisadeghi was terminated because of his misuse of the employee discount, in violation of the company's written policy, and then lying about his conduct in an email to his supervisor.

In general, "courts have consistently held that they may not second-guess an employer's non-discriminatory business decisions, regardless of their wisdom, unless there is actual evidence that they were motivated by discrimination. Federal courts do not hold a roving commission to review business judgments." *Peters v. Mount Sinai Hosp.*, No. 08 Civ. 7250, 2010 WL 1372686, at *9 (S.D.N.Y. Mar. 30, 2010) (citing *Montana v. First Fed. Sav. & Loan Ass'n*, 869 F.2d 100, 106 (2d Cir. 1989)).

The Defendant has met its burden. Equinox had a written policy that detailed the proper use of employee discounts and informed the Plaintiff, both through the policy and through the David Harris email, that the failure to abide by this policy could amount to discipline up to and including termination of employment. The Plaintiff was provided with this policy and received the David Harris email. Even in receipt of David Harris's email, which reinforced the company policy, the Plaintiff continued purchasing discounted personal training sessions for Cohen in exchange for legal services. Moreover, when he was approached by his superior about this, he lied and claimed that all sessions were purchased prior to David Harris's email. Equinox's investigation revealed, and the Plaintiff confirmed during his deposition, that personal training sessions were purchased for Cohen using his employee discount after the date of the David Harris email.

Accordingly, the Defendant has articulated legitimate, non-discriminatory reasons for the termination: namely, that the Plaintiff violated employee policy after it was reinforced and lied when responding to inquiries from his superiors. *See, e.g.*, *Gonzalez v. United Parcel Serv.*, No. 15 Civ. 8421, 2017 WL 8780567, at *2 (S.D.N.Y. Nov. 8, 2017) (holding that lying to management during an investigation established a legitimate, non-discriminatory reason for termination) ; *Rodriguez v. Long Island Am. Water, Inc.*, No. 12-cv-2970, 2014 WL 4805021, at *5 (E.D.N.Y. Sept. 26, 2014) (finding that falsifying a timesheet and lying to cover it up constituted a legitimate, non-discriminatory reason for termination); *Coltin v. Corp. for Justice Mgmt., Inc.*, 542 F. Supp. 2d 197, 205 (D. Conn. 2008) (holding that, even if the employee that terminated the plaintiff was incorrect in her understanding or implementation of the company's policies, or even if the plaintiff had implicit permission to engage in the purported conduct, there was insufficient evidence that wrongful discrimination was involved in the plaintiff's termination); *Opoku-Acheampong v. Depository Tr. Co.*, No. 99 Civ. 0774, 2005 WL 1902847, at *4 n.3 (S.D.N.Y. Aug. 9, 2005) (holding that lying, in violation of the defendant's conduct policy provided a legitimate, non-discriminatory reason for the plaintiff's termination).

As the Defendant has proffered a legitimate, non-discriminatory reason for the Plaintiff's termination, the Court next considers whether it was pretextual.

## 2. Whether the Defendant's Reasons are Pretextual

Once the Court determines that the Defendant has proffered a legitimate, non-discriminatory reason, the Plaintiff must introduce evidence from which a reasonable jury could decide, by a preponderance of the evidence, that discrimination played a role in the Defendant's actions. *See Holcomb*, 521 F.3d at 141 ("We now ask whether, without the aid of the presumption, [the plaintiff] has raised sufficient evidence upon which a reasonably jury could conclude by a

16

preponderance of the evidence that the decision to fire him was based, at least in part, on the fact that his wife was black."); *Kelly v. Signet Star Re, LLC*, 971 F. Supp. 2d 237, 253 (D. Conn. 2013) ("The decisive question in such an inquiry is whether Plaintiff has presented contradictory evidence of such quality 'that a reasonable jury could return a verdict for the non-moving party[.]' The question, then, is whether a reasonable jury, properly instructed in the law by the trial judge, could find based upon the evidence Plaintiff has provided that the proffered reason Defendant has offered for Plaintiff's adverse employment actions was pretextual." (quoting *Anderson*, 477 U.S. at 248)).

In the Second Circuit, a "plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995). At this stage, "[c]onclusory and speculative allegations will not suffice to demonstrate discriminatory intent." *Henny v. New York State*, 842 F. Supp. 2d 530, 553 (S.D.N.Y. 2012). Here, "[a] court may re-consider evidence presented to find an inference of discrimination at the prima facie stage." *Ingenito v. Riri USA, Inc.*, No. 11-CV-2569, 2013 WL 752201, at *12 (E.D.N.Y. Feb. 27, 2013); *see also Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 124 (2d Cir. 2004) ("[T]he plaintiff may, depending on how strong it is, rely upon the same evidence that comprised her prima facie case, without more."). However, "[t]he burden of establishing pretext is higher than that required to establish a prima facie case of discrimination." *Geras v. Hempstead Union Free Sch. Dist.*, 149 F. Supp. 3d 300, 328 (E.D.N.Y. 2015) (Spatt, J.).

The Plaintiff has not established that Equinox's legitimate, non-discriminatory reasons for terminating him were motivated in part by national origin discrimination. The Plaintiff's primary

argument is that Harrison, who purportedly made frequent comments to the Plaintiff about his national origin, knew that Cohen's use of discounted personal training sessions was approved, and began the "process and investigation that culminated" in the Plaintiff's termination. Daeisadeghi alleges that beginning in August 2014, Harrison referred to the Plaintiff multiple times as a "crazy Persian" and would, at times, "elongate" his name on weekly conference calls. On March 29, 2015, Harrison observed Cohen using a personal training session at the Roslyn Club that was purchased using the Plaintiff's employee discount. Later that day, Harrison emailed the Plaintiff and questioned why Cohen was using a personal training session in Daeisadeghi's name. The Plaintiff responded to Harrison that he purchased discounted sessions for her "as a gift" for her assistance regarding a custody dispute and explained that the session was purchased prior to the October 22, 2014 email from David Harris reminding employees of the consequences of inappropriately using employee discounted personal training sessions. Harrison subsequently reported the incident to Caporusso and forwarded the Plaintiff's email explaining the situation. This prompted Equinox to conduct an investigation into the discounted personal training sessions and ultimately led to his termination.

"[T]he allegedly discriminatory comments must be made by the individual decision maker responsible for the adverse employment action suffered by the plaintiff." *Tillman v. Luray's Travel*, 137 F. Supp. 3d 315, 332 (E.D.N.Y. 2015) (citing *Daniel v. AutoZone, Inc.*, No. 1:13-CV-118, 2015 WL 2114158, at *4 (N.D.N.Y. May. 6, 2015)). "The more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination. For example, remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark." *Tomassi*

*v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) (internal citations omitted), *abrogated on other grounds by Vogel v. CA, Inc.*, 662 F. App'x 72, 75 (2d Cir. 2016).

While there is no dispute that Harrison's actions led to the investigation, it was Caporusso who determined that the Plaintiff had violated Equinox's policy and terminated the Plaintiff's employment. The Plaintiff has not put forth any evidence that Caporusso was ever involved in any of the activities alleged in this case or discriminated against the Plaintiff based on his national origin. There is no evidence that Harrison was involved in the ultimate decision to terminate Daeisadeghi. Harrisons actions are insufficient to demonstrate that the Defendant's proffered reason was pretextual.

Construing all of the evidence in the light most favorable to the Plaintiff, a reasonable jury could not find that national origin discrimination impacted the Plaintiff's termination. The Defendant's motion for summary judgment as to the Plaintiff's national origin discrimination claim is granted. Accordingly, the Plaintiff's wrongful termination claim under Title VII is dismissed.

**D.  TITLE VII HOSTILE WORK ENVIRONMENT CLAIM**

"Title VII prohibits an employer's conduct that 'has the purpose or effect of … creating an intimidating, hostile, or offensive working environment,' and 'affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult.'" *Lumhoo v. Home Depot USA, Inc.*, 229 F. Supp. 2d 121, 152 (E.D.N.Y. 2002) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)). "[T]o establish a hostile work environment claim under Title VII, a plaintiff must produce evidence that the complained of conduct '(1) is objectively severe or persuasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively

19

perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's …

protected characteristic.'" *Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 446

(E.D.N.Y. 2013) (quoting *Robinson v. Harvard Prot. Servs.*, 495 F. App'x 140, 141 (2d Cir.

2012)). With regard to the third element, the Plaintiff is required to link the actions by the

Defendant to his nationality. *See Johnson v. Cty. of Nassau*, No. 10-CV-6061, 2014 WL 4700025,

at *12 (E.D.N.Y. Sept. 22, 2014) ("Although '[f]acially neutral incidents may be included, of

course, among the totality of the circumstances that courts consider in any hostile work

environment claim,' plaintiff nevertheless must offer some evidence from which a reasonable jury

could infer that the facially neutral incidents were in fact discriminatory" (quoting *Alfano v.

Costello*, 294 F.3d 365, 378 (2d Cir. 2002))). In this regard, "[t]o withstand summary judgment,

[the] Plaintiff must produce evidence that 'the workplace was so permeated with discriminatory

intimidation, ridicule, and insult, that the terms and conditions of h[is] employment were thereby

altered.'" *Lumhoo*, 229 F. Supp. 2d at 152 (quoting *Mills v. S. Conn. State Univ.*, 519 F. App'x

73, 75 (2d Cir. 2013)).

The Plaintiff must demonstrate that the conduct at issue created an environment that is both

objectively and subjectively hostile. *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d

426, 436 (2d Cir. 1999), *abrogated on other grounds by Burlington N. Santa Fe Ry. Co. v. White*,

548 U.S. 53, 126, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006); *White v. Fuji Photo Film USA, Inc.*,

434 F. Supp. 2d 144, 154–155 (S.D.N.Y. 2006). Therefore, the Plaintiff must allege not only that

he found the environment offensive, but that a reasonable person also would have found the

environment to be hostile or abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22, 114 S. Ct.

367, 126 L. Ed. 2d 295 (1993). In this regard, the Court notes that, although "the standard for

establishing a hostile work environment is high, ... [t]he environment need not be 'unendurable'

or 'intolerable.'" *Sclafani v. P.C. Richard & Son*, 668 F. Supp. 2d 423, 431 (E.D.N.Y. 2009) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

Even when a plaintiff establishes that he was exposed to an objectively and subjectively hostile work environment, "[he] will not have a claim … unless [he] can also demonstrate that the hostile work environment was caused by animus towards [him] as a result of [his] membership in a protected class." *Sullivan v. Newburgh Enlarged Sch. Dist.*, 281 F. Supp. 2d 689, 704 (S.D.N.Y. 2003) (citing *Forts v. City of New York Dep't of Corr.*, No. 00 Civ. 1716, 2003 WL 21279439, at *4 (S.D.N.Y. June 4, 2003)); *see also Fordham v. Islip Union Free Sch. Dist.*, 662 F. Supp. 2d 261, 273 (E.D.N.Y. 2009) (stating that incidents comprising a hostile work environment claim must occur under circumstances where the "incidents can reasonably be interpreted as having taken place on the basis of that trait or condition" (quoting *Parekh v. Swissport Cargo Servs., Inc.*, No. 08-CV-1994, 2009 WL 290465, at *4 (E.D.N.Y. Feb. 5, 2009))).

Further, "[o]nce a plaintiff has established the existence of a hostile workplace, [he] must then demonstrate that the harassing conduct 'which created the hostile situation should be imputed to the employer.'" *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63 (2d Cir. 1998) (quoting *Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir. 1992)); *accord Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 452 (E.D.N.Y. 2011) (Spatt, J.) (noting that in order to succeed on a hostile work environment claim against an employer, "the plaintiff must show that 'a specific basis exists for imputing the conduct that created the hostile work environment to the employer'" (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 221 (2d Cir. 2004))).

The Defendant contends that in the totality of circumstances, the conduct alleged here, is not sufficient to constitute a hostile work environment.

"The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his] employment were thereby altered." *Alfano*, 294 F.3d at 373. To determine whether allegations are sufficient to be considered hostile under Title VII, the Supreme Court has provided a non-exhaustive list of factors to weigh. These include (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening, humiliating or merely an offensive utterance; (4) whether it unreasonably interferes with the employee's job performance; and (5) the effect on the employee's psychological wellbeing. *Harris*, 510 U.S. at 23; *Richardson*, 180 F.3d at 437.

Construing the record in the light most favorable to the Plaintiff, Daeisadeghi's allegations fail to raise a triable issue of fact, based on the factors used in this circuit. The Plaintiff alleges that during the course of employment at Equinox, he was subjected to comments regarding his national origin. As detailed above, Daeisadeghi alleges that Bekteshi referred to the Plaintiff as a "crazy Persian" and purportedly mocked the Plaintiff's accent. The Plaintiff also contends that Harrison referred to Daeisadeghi as a "crazy Persian" and "elongate[d]" his name on weekly conference calls. These comments allegedly occurred on a daily basis, in the case of Bekteshi, and a weekly basis in the case of Harrison.

First, the frequency and severity of the incidents do not rise to a level sufficient to create a hostile work environment. Harrison and Bekteshi's comments, while perhaps insulting and offensive, are not reflective of discriminatory animus. The record clearly reflects that Harrison frequently elongated many other employees' names, regardless of national origin. This conduct is inappropriate in the workplace but is not indicative of pervasive hostility toward the Plaintiff because of his national origin. The record further reflects that Daeisadeghi also participated in similar antics, as he repeatedly told Bekteshi that he was going to "kick [his] ass" or "kick [him]

in the head." The Court cannot then conclude that Bekteshi or Harrison's "crazy Persian" remarks, although they were recited regularly, created a hostile work environment directed at the Plaintiff because Daeisadeghi himself participated in similar, objectionable conduct. This appears to be part of a workplace atmosphere that generally condoned inappropriate behavior, including joking between employees rather than one saturated with discriminatory animus.

Although the Court notes that the Plaintiff failed to address the remaining hostile work environment factors, they weigh in favor of the Defendant. The Plaintiff has not alleged that he was ever physically threatened or humiliated. The only comment in the record that can be construed as a physical threat was made by the Plaintiff to Bekteshi and other employees. As mentioned above, the Plaintiff repeatedly told Bekteshi and other employees that he was going to "kick their ass" or "kick them in the head," although presumably in a lighthearted manner. There is no indication that Harrison or Bekteshi ever threatened the Plaintiff, even as part of a joke.

Further, the Plaintiff has not alleged that any purported comments influenced or interfered with his work. Daeisadeghi referred to himself as a "high performance employee" during his deposition and noted that his department frequently met or exceeded its sales goals. The Plaintiff was promoted numerous times at Equinox, all at the behest of Harrison, and he personally considered himself one of Harrison's best managers. By all accounts, the Plaintiff flourished at Equinox prior to his termination and was well-regarded by his fellow employees and supervisors.

While the Plaintiff contends that he made complaints about the conduct of Harrison and Bekteshi, the record reflects only general complaints of largely business-related conduct. Further, these claims were contradicted by the Plaintiff's own testimony, who, during his deposition stated multiple times that he sought a transfer for business-related reasons. Even if the Plaintiff made

specific complaints of the conduct-at-issue, which is not reflected in the record, there is no evidence that his work was impacted in any way.

Finally, the Plaintiff has failed to provide any evidence of psychological harm that resulted from the conduct-at-issue. Rather, the Plaintiff testified in his deposition that the alleged conduct did not cause him any emotional distress.

In viewing the totality of the record, the application of these factors leads the Court to conclude that the Plaintiff has not provided sufficient evidence to raise a disputed issue of fact as to his hostile work environment claim.

Accordingly, the Defendant's motion for summary judgment with respect to the Plaintiff's hostile work environment claim is granted.

### III. CONCLUSION

For the reasons set forth above, the Defendant's motion for summary judgment pursuant to Rule 56 is granted and the Plaintiff's complaint is dismissed in its entirety.

The Clerk of the Court is respectfully directed to close the case.


It is **SO ORDERED**:

Dated: Central Islip, New York

January 25, 2019

_____/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge